CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 18 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LORETTE M. LEMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:06cv567 |
| | ) | |
| MICHAEL J. ASTRUE, | ) By: | Hon. Michael F. Urbanski |
| COMMISSIONER OF SOCIAL SECURITY, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Lorette M. Lemond ("Lemond"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). Lemond claims disability from July 20, 2001 due to back, hip, and leg pain, carpal tunnel syndrome, and a myriad of mental health concerns. After a long history of administrative consideration, the Administrative Law Judge ("ALJ") granted Lemond supplemental security income benefits as of July 1, 2007, but denied disability insurance benefits as Lemond's date last insured was December 31, 2006. The principal issue on appeal is whether the ALJ properly evaluated Lemond's claim of disability due to her mental health issues. After consideration of the administrative record in light of the standard of review on appeal, it is clear that the ALJ's decision to deny disability benefits for the period before July 1, 2007 was supported by substantial evidence in the record. As such, it is **RECOMMENDED** that this case be **AFFIRMED** and the appeal dismissed.

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor reweigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, whether he or she (5) can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520) (2005). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Heckler, 461 U.S. at 460. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the Residual Functional Capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

## II.

Lemond, born in 1957, filed her application for disability on May 5, 2003, claiming disability commencing on July 20, 2001 due to hernia, carpal tunnel, gout, back pain, and depression. (Administrative Record ("R.") at 115-24.) Lemond attended the eighth grade, obtained her GED, and completed training as an automotive service advisor. (R. 122.) Lemond worked in that capacity for a few years and worked for several years as a courier / driver and as a restaurant manager. (R. 117.)

The administrative record in this case is enormous, and the agency's consideration of Lemond's disability claims fills two volumes. After painstaking review of the administrative record, the ALJ found Lemond to be disabled as of July 1, 2007, but not before. Because her insured status had expired on December 31, 2006, Lemond was not eligible for disability insurance benefits, but was granted supplemental security income as of July 1, 2007. The issue presented on appeal is whether the ALJ's selection of that date is supported by substantial evidence.

## III.

Lemond has complained of back, leg, hip, and other pain for many years. She also claims that she could not continue working as a courier or taxicab driver because of this pain as well as carpal tunnel syndrome. The ALJ concluded that "[a]s of a time around July 1, 2007, the claimant's physical and mental condition deteriorated considerably. Her treating physician subsequently diagnosed her with a form of transitional-cell carcinoma of the right kidney present at least as early as December of 2007 and treatment." (R. 438.) Because of this cancer, Lemond had one kidney removed in April 2008. (R. 913-22.)

From a physical standpoint, the decision of the ALJ is amply supported by substantial evidence. There are no opinions from any health care provider who treated Lemond indicating that she was physically unable to perform substantial gainful activities before July 1, 2007. Despite Lemond's complaints of back pain, an x-ray taken of her lumbar spine in July 2005 was normal, (R. 308), and an MRI taken on August 1, 2005 noted only mild degenerative changes at the L1-L2 level. (R. 314.) Dr. William Humphries of the Virginia Department of Rehabilitative Services examined Lemond on July 3, 2003. Dr. Humphries noted Lemond's complaints of gout, history of bilateral carpal tunnel syndrome without evidence of severe functional impairment, multiple pains of unknown origin, shortness of breath on exertion of unknown origin, and a history of alcohol abuse. (R. 173-74.) Dr. Humphries noted no mental status issues whatsoever, (R. 173), and evaluated Lemond as being able to do medium work.

A Medical Source Statement of Ability to Do Work-Related Activities (Physical) was completed by Lemond's treating doctor John K. Badlissi on April 26, 2007. (R. 643-46.) Dr. Badlissi found that Lemond could occasionally and frequently lift and or carry 20 pounds and she was not impaired in her ability to sit, stand, and walk. (R. 643-44.) Dr. Badlissi found that Lemond was limited in pushing or pulling with her lower extremities and may have difficulty in rising from a sitting position. (R. 644.) Dr. Badlissi noted that Lemond's MRI noted minimal degenerative joint disease with no nerve involvement. (R. 644.) Dr. Badlissi noted that further studies were pending for possible carpal tunnel syndrome. (R. 645.)

Consistent with the ALJ's finding, the record does reflect a deterioration of Lemond's condition in late 2007 and 2008. On December 11, 2007, Connie E. Cavett, Lemond's counselor since August 1, 1007, wrote, "I am saddened to see what I believe is deterioration in her physical

health; it seems it is becoming more difficult for her to walk and to rise from her chair at the end of our sessions." (R. 832.) In early 2008, a right renal pelvic mass was discovered. (R. 888-92.) This was determined to be a low grade transitional cell carcinoma, which was surgically removed in April 2008. (R. 913.)

## IV.

The central issue on appeal concerns Lemond's mental condition. The administrative record reflects Lemond's lifelong struggle with depression and mental health issues stemming from a series of traumatic events during her childhood. (R. 320-22, 725, 279, 791-97.) Lemond has had sporadic mental health treatment over the years.

Lemond was seen by a counselor at Therapy Works for one session on March 21, 2004. (R. 209-16.) The counselor's notes recount the myriad events of emotional trauma in Lemond's life and resulting depression and post traumatic stress. (R. 211-12.) Substance abuse issues were noted, and Lemond's Global Assessment of Functioning (GAF) was determined at that time to be 60.[2] (R. 210, 214.)

Lemond was seen by Ann Sauls, a licensed clinical social worker at Kuumba Community Health & Wellness Center from November 2004 through March 2005. The progress notes from this treatment reflect that Lemond complained of chronic pain in her back, hips, and legs, and of depression. Her alcohol consumption was a regular counseling topic. (R. 266-71.)

Psychologist Jerome S. Nichols of the Virginia Department of Rehabilitative Services examined Lemond on March 2, 2005. Dr. Nichols noted her childhood history of abuse and

---

[2]The GAF is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF value in the range of 51-60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

6

approximate four-year history of depression. Dr. Nichols noted that Lemond "drinks three times a week so she can sleep," and had a history of drug abuse as a teenager. (R. 258.) He diagnosed her with a "depressive disorder, not otherwise specified; rule out a somatoform disorder, not otherwise specified; posttraumatic stress disorder; and alcohol dependence. Her current GAF is 60." (R. 259.) Dr. Nichols found Lemond able to work, with moderate impairments in maintaining attention and concentration for extended periods and responding appropriately to work pressures in a normal work setting. (R. 262-63.) He deemed her "obviously very preoccupied with her physical symptoms." (R. 260.)

The administrative record contains three documents authored by psychiatrist Jitrenda S. Desai, M.D. during May, June, and July 2005. In an Initial Evaluation summary dated May 13, 2005, Dr. Desai stated that Lemond provided a "long detailed history of traumas over her lifetime." (R. 279.) The report reflects that Lemond "reports low self-esteem, no motivation, no physical problems, some intrusive thoughts and flashbacks." (R. 279.) Dr. Desai noted a history of excessive drinking, which Lemond stated she stopped a month before. (R. 279.) Dr. Desai diagnosed Lemond with PTSD, noted that he needed to rule out major depression (severe, recurrent) and pegged her GAF at 35.[3] Dr. Desai prescribed some antidepressants. A progress note one month later, dated June 15, 2005, found Lemond to be "better" and assessed her GAF at 70.[4] (R. 278.) On July 7, 2005, Dr. Desai completed a checklist entitled Medical Opinion Re:

---

[3] A GAF in the range of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgement, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

[4] A GAF of 61-70 reflects some mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

Ability To Do Work-Related Activities (Mental). (R. 280-84.) In the category of Mental Abilities and Aptitude Needed to do Unskilled Work, Dr. Desai rated Lemon "Fair" in nine areas and "Poor" in seven areas. No areas were rated "Good." In the category of Mental Abilities and Aptitudes Needed to do Semiskilled and Skilled Work, all four areas were rated "Poor." In the category Mental Abilities and Aptitudes Needed to do Particular Types of Jobs, Lemond was rated as "Good" in the area of "Adhere to basic standards of neatness and cleanliness," "Fair" in two categories and "Poor" in two others. Dr. Desai diagnosed PTSD, indicated that it had existed since July 1, 2001, and stated that Lemond would miss work more than three times a month.

Charles H. Holland, a psychologist, appeared as a medical expert at the administrative hearing held on October 6, 2005, and was extremely critical of Dr. Desai's disability opinion, testifying that "[i]t's so internally inconsistent and contradictory . . . that it's not considered to be either reliable or valid." (R. 346.) Dr. Holland was particularly troubled by the jump in Lemond's GAF figure from 35 to 70 in one month as found by Dr. Desai. Dr. Holland noted that "[t]he 35 really is severe, severe. She has trouble functioning. She can't brush her own teeth." (R. 347.) In essence, Dr. Holland did not believe that the clinical notes reflected a person with a GAF at this low level. (R. 348.) Dr. Holland did not consider Lemond to have major depression, rather he diagnosed her with "DSM4, pain disorder associated with a general medical condition, chronic." (R. 350, 352.)

Martha Allman, a Licensed Professional Counselor, saw Lemond twice, on August 30, 2005 and on October 12, 2005. Allman's detailed intake and clinical notes recount the multiple traumatic events from Lemond's childhood and resulting psychological issues. (R. 320-26, 331.)

Allman diagnosed Lemond with alcohol abuse, chronic PTSD, and borderline personality disorder. (R. 330.)

On November 8, 2005, Lemond visited Carilion Internal Medicine Crystal Spring complaining of low back pain and seeking a narcotic contract to obtain a narcotic pain medicine, Lortab. (R. 672.) Dr. Jesse M. Sabiiti encouraged Lemond to continue physical and occupational therapy and non-steroidal anti-inflammatory medicines but declined to provide any narcotics to her given her mild MRI findings. (R. 672.)[5] During her November 8, 2005 visit, Lemond denied having any depression or anxiety. (R. 672-73.)

There are no medical records in the administrative record for any treatment by Lemond during the next fifteen months.

On March 9, 2007, Lemond was seen by Dr. William S. Erwin for a complaint of left knee pain. Imaging done that day revealed mild degenerative disc disease in her low back and mild to moderate degenerative osteoarthritis of the left knee. (R. 667-69.) Dr. Erwin's notes reflect a long discussion concerning Lemond's myriad problems, but he prescribed no medications. (R. 661-62.) Later that month, Lemond was seen again by Dr. Badlissi for back pain. After lengthy discussion between Lemond and two physicians, she was placed on a narcotics contract and prescribed Lortab. (R. 647.) The medical chart from that visit make no mention of depression, and instead reflects "PSYCHIATRIC: Mood and insight normal." (R. 649.)

Lemond was seen on June 8, 2007 by psychiatrist David W. Hartman, complaining of being very depressed and lonely. Dr. Hartman's note outlines various "difficult painful

---

[5]A few months earlier, Dr. Badlissi likewise had refused to prescribe narcotic pain medication because of the lack of objective focal findings on MRI. (R. 316.)

situations," including suicides of close friends and rape. (R. 725.) Dr. Hartman diagnosed Lemond with dysthymia (chronic mood disorder), chronic pain syndrome, post traumatic stress disorder and assessed her GAF at 45.[6] Dr. Hartman noted Lemond's past use of "acid" and ongoing alcohol abuse. (R. 725.)[7]

On October 2, 2007, psychologist Bruce Sellars completed a detailed Psychology Report on Lemond, including a mental status assessment and some testing. Dr. Sellars noted significant depression and "significant symptoms related to traumatic stress." (R. 795.) Dr. Sellars determined her GAF to be 50, and diagnosed PTSD, dysthymic disorder, rule out somatization disorder, pain disorder with both medical and psychological factors, and mixed substance abuse, in partial remission. (R. 796.) Dr. Sellars concluded as follows:

> Lorette Lemond presents as a woman who has had a very difficult life, both with her experience of trauma and witnessing a number of difficult situations over the course of her life. There is also a significant substance abuse history in the past, though she reports that her drinking is very occasional now. She is reporting ongoing significant health and pain concerns. There also seems to be the residual effects of the past trauma and of ongoing depression for many years now.
>
> * * * * * * *
>
> Due to her experience of pain, she would have trouble working in a competitive work environment, both with attending and staying at a work situation for a long time. Although she has considerable work history in the past, it also sounds as if she has had conflicts with individuals in the past as well. She likely would have trouble dealing with stress of a competitive work environment, given the ongoing nature of her depression. She likely would not have difficulty

---

[6] A GAF of 41-50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

[7] At the counseling session, Lemond described herself as a binge drinker, and admitted to drinking that day. (R. 725.) Presumably, Dr. Hartman's reference to "acid" refers to LSD.

> performing simple and repetitive tasks as well as detailed or complex tasks. Given the fact that she is currently in counseling, this is seen as a positive prognostic sign. However, the chronicity of her symptoms makes the prognosis more guarded.

(R. 796-97.)

While there is no dispute that Lemond has struggled with mental health issues her whole life, the question presented in this appeal is whether there is substantial evidence to support the ALJ's finding that she was not disabled before July 1, 2007.

At great length, the ALJ's decision explains that he did not believe that the evidence supported a finding of disability prior to July 1, 2007. The undersigned agrees and **RECOMMENDS** that the district court find that permanent disability was not established before that date. The ALJ was justified in relying on the opinions of Dr. Nichols, the examining state agency psychologist, and Dr. Hoffman, who testified at the administrative hearing. The ALJ appropriately considered the opinion of Dr. Desai in light of the testimony of Dr. Hoffman, especially given the great disparity in GAF levels noted by Dr. Desai within a two month period during the summer of 2005. A few months later, in November 2005, Lemond makes no complaint of depression or anxiety when seeking narcotic pain medication for her back, and there are no treatment records at all for the next fifteen months, until March 2007. The ALJ's decision is further supported by treating Dr. Badlissi's notation from his examination of Lemond on April 5, 2007 that Lemond's mood and insight were normal. Given this record, it is plain that substantial evidence supports the ALJ's determination that permanent disability was not established before July 1, 2007.

# IV.

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the court does not suggest that Lemond was totally free of any distress prior to July 1, 2007. The objective medical record simply fails to document the existence of any physical or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment before that date. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Lemond's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing any work before that date. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned concludes that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED.**

The Clerk is directed to transmit the record in this case to Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of Court is directed to send certified copies of this Report and Recommendation to counsel of record for the parties.

Enter this 17th day of November, 2009.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge